## JOHN McKINNEY v. STATE.

No. A-3796.    Opinion Filed May 25, 1921.
(198 Pac. 108.)

(Syllabus.)

1.    **Larceny.—Larceny by Fraud—Insufficient Evidence.** Evidence in a prosecution for grand larceny by fraud held insufficient to sustain a conviction.

2.    **Evidence.—Hearsay Evidence.** In prosecution for grand larceny of the proceeds of cotton, evidence as to the weight of cotton in the field, when it appeared that the parties only weighed a portion of the cotton, and that the remainder was weighed by other parties, and reported to them, held hearsay and inadmissible.

Appeal from District Court, Wagoner County; Benjamin B. Wheeler, Judge.

John McKinney was convicted of grand larceny, and he appeals.   Reversed.

S. M. Rutherford and Branson & Alcorn, for plaintiff in error.

S. P. Freeling, Atty. Gen., and C. W. King, Asst. Atty. Gen., for the State.

PER CURIAM.   The information in this case charged that plaintiff in error, John McKinney, together with C. C. McKinney, H. L. Armstrong, D. M. Brown, Roy Vann, and Ella Nicodemus, did commit the crime of grand larceny in that they did willfully, wrongfully, unlawfully, and feloniously take, steal, and carry away by fraud, without the consent and against the will of the true owners, the sum of $27.40, arising out of the sale of cotton by Ike Willis to C. H. Kingham and E. F. Case, partners, doing business under the firm name of Kingham & Co., said money being the personal property of said Kingham & Co.

A severance was granted, and upon his separate trial the jury found the defendant, John McKinney, guilty of the crime

of grand larceny by fraud, as charged in the information, but failed to agree upon the punishment. After the overruling of the motion for a new trial, and a motion in arrest of judgment, defendant was sentenced to imprisonment in the penitentiary for the term of two years and six months. He appeals from the judgment.

The Attorney General has filed the following confession of error:

"To constitute larceny by fraud, it is contended by plaintiff in error, the taking must be accomplished by the party charged from the owner of property, in which the owner voluntarily parts with possession only, but retains the right of property in the subject-matter, and that the design to convert the property to the use of the taker, or some one else, must be active at the time of the taking. In other words, the owner must part with the possession of the property alone, reserving the ownership therein, and the possession must be fraudulently obtained with the then intent on the part of the person taking it to convert it to his own or another's use in order to constitute the offense of larceny. If the owner parts with the possession and title, due to the deception and artifice of the taker, then the offense constitutes obtaining money under false pretense, and not larceny by fraud. The rule laid down in this connection by Mr. Russell in his work on Crimes, quoted in note to Buck v. State, 2 Am. & Eng. Ann. Cas. 1010, is as follows: 'If, by means of any trick or artifice, the owner of property is induced to part with the possession only, still meaning to retain the right of property, the taking by such means will amount to larceny; but if the owner part with, not only the possession of the goods, but the right of property in them also, the offense of the party obtaining them will not be larceny, but the offense of obtaining goods by false pretenses.'

"The syllabus of the case reads: 'If one obtains possession of the property of another by fraud, and the owner intends to part with the title as well as the possession, the offense is that of obtaining property by false pre-

tenses; but if the possession is frauduently obtained, with intent on the part of the person obtaining it to convert it to his own use, and the owner intends to part with the possession merely, and not the title, the offense is larceny.'

"Larceny by fraud has been defined by this court in the case of Bivins v. State, 6 Okla. Cr. 521, 120 Pac. 1033, quoting: 'Where the owner of personal property voluntarily parts with the possession of the same for a particular purpose, and the person who receives the possession avowedly for that purpose has at the time a fraudulent intention to make use of such possession as a means of converting the property to his own use, and does so convert it, the crime is larceny.'

"In the instant case, the owner parted with his money for a distinct purpose, i. e., that of having it applied to the payment for a specified number of pounds of cotton—not so many pounds of cotton and so many pounds of some other substance. Suppose the cotton buyer had intrusted the defendant with his check book for the purpose of buying cotton and defendant had, at the time, the intention to pay owners of the cotton for water or other foreign substance contained therein, then the offense certainly would amount to larceny by fraud under the rule in the Buck Case. The basic facts are not different in the instant case. The offense is larceny.

"After carefully reviewing the testimony in the case, the writer is of the opinion that the evidence upon which a conviction was had is the testimony of the farmer who weighed his cotton in the field, kept it dry until marketed at the gin of defendant, and that, upon weighing same at the gin, it weighed 212 pounds more than in the field, for which excess weight he obtained the sum of money alleged to be the subject of the larceny in this case. This testimony is undisputed. There is no testimony, however, in the entire record which, by circumstance or otherwise, connects the defendant, John McKinney, with the transaction in question, and there is no evidence that he instructed the overweight, or had knowledge thereof. The court instructed the jury on circumstantial evidence, and the only circumstances shown in the case are the marketing of the cotton in question, which was overweighed at the gin, and in addition thereto, the testimony of a number of other farmers

whose cotton was overweighed at the same gin during the same season. This latter testimony was introduced to show intent. The prosecuting witness, Kingman, also testified that he lost money up to the time a new weigher was placed in charge of the scales at the gin, by order of the corporation commission, and that after that time he ceased to lose. This, in substance, constitutes the complete testimony of the state against the defendant, and in the opinion of the Attorney General, the same is insufficient to support a verdict of guilty under the rule announced by the court, that, if there is any evidence reasonably tending to support the verdict of the jury, it will not be disturbed. If there was slight evidence even remotely connecting the defendant with knowledge of the intention to overweigh the cotton, and to aid in fraudulently obtaining for the owner of the cotton the money of the cotton buyer, the verdict could stand on the facts, but, in the absence of even slight testimony on this point, we think there is a lack of proof.

"The court permitted parties to testify, over the objection of defendant, in the trial as to weight of cotton in the field, when the facts show that the parties only weighed a portion of the cotton, and that the remainder was weighed by other parties, and reported to them, and upon that basis they testified to the difference in weight in the field and at the gin. This, we think, was purely hearsay testimony, and erroneously admitted."

After a careful examination and consideration of the record, we are of the opinion that the confession of error is well founded, and should be sustained. The judgment of the trial court is therefore reversed.